

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-10-2008

# Windt v. Qwest Comm Intl Inc

Precedential or Non-Precedential: Precedential

Docket No. 06-4662

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Windt v. Qwest Comm Intl Inc" (2008). *2008 Decisions.* Paper 940.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/940

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____


No. 06-4662
No. 06-4808

_____


MARCEL WINDT; E.T. MEIJER,
IN THEIR CAPACITY AS TRUSTEES
IN BANKRUPTCY FOR KPNQwest
N.V., et al,


                          Appellants at 06-4662/
                          Cross-Appellees at 06-4808


v.


QWEST COMMUNICATIONS INTERNATIONAL, INC.;
JOHN A. MCMASTER; JOSEPH P. NACCHIO;
ROBERT S. WOODRUFF,


                          Appellees at 06-4662/
                          Cross-Appellants at 06-4808

_____


Appeal from the United States District Court
for the District of New Jersey

D.C. No. 2:04-cv-03026
District Judge: Honorable Garrett E. Brown, Jr., Chief Judge
_____

Argued March 11, 2008
_____

Before: FUENTES, CHAGARES and ALDISERT, <u>Circuit Judges</u>
(Filed: June 10, 2008)

Richard McMillan, Jr.
Clifton S. Elgarten (Argued)
David L. Haga
Daniel W. Wolff
CROWELL & MORING, LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2595

Melvyn H. Bergstein
WALDER, HAYDEN & BROGAN
5 Becker Farm Road
Roseland, NJ 07068

Counsel for Appellants/Cross-Appellees

James P. Denvir
Jonathan Sherman (Argued)
BOIES, SCHILLER & FLEXNER, LLP
5301 Wisconsin Avenue, N.W.

2

Washington, D.C. 20015
Thomas R. Curtin
George C. Jones
GRAHAM CURTIN, A Professional Association
4 Headquarters Plaza
P.O. Box 1991
Morristown, NJ 07962-1991

Counsel for Appellee/Cross-Appellant Qwest Communications International, Inc.

Andrew T. Berry
Joseph T. Boccassini
James C. Sheil
MCCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102-4096

Counsel for Appellees/Cross-Appellants John A. McMaster and Robert S. Woodruff

Herbert J. Stern
Jeffrey Speiser
Joel M. Silverstein
STERN & KILCULLEN, LLC
75 Livingston Avenue
Roseland, NJ 07068

Counsel for Appellee/Cross-Appellant Joseph P. Nacchio

Ira A. Finkelstein
HARNIK WILKER & FINKELSTEIN LLP
Olympic Tower
645 Fifth Avenue, Suite 703
New York, NY 10022-5937

      Counsel for Appellee/Cross-Appellant John A.
McMaster

Jeffrey Gross
COOLEY GODWARD KRONISH LLP
The Grace Building
Avenue of the Americas
New York, NY 10036-7798

      Counsel for Appellee/Cross-Appellant Robert S.
Woodruff

---

OPINION OF THE COURT

---

ALDISERT, <u>Circuit Judge</u>

      Marcel Windt and E.T. Meijer, in their capacity as trustees in bankruptcy for KPNQwest N.V. ("Trustees"), appeal from the dismissal of their amended complaint on <u>forum non conveniens</u> grounds by the United States District Court for the District of New Jersey. The Trustees asserted

4

claims against Qwest Communications International, Inc. ("Qwest"), Joseph P. Nacchio, Robert A. McMaster and Robert S. Woodruff (collectively referred to as "Defendants") arising from the bankruptcy of a Dutch company, KPNQwest N.V. ("KPNQwest"). Specifically, we must decide whether the District Court abused its discretion in assigning the Trustees' choice of forum a low degree of deference, whether the District Court abused its discretion in balancing the public and private interest factors implicated in this case, and whether the District Court abused its discretion in determining that litigation in the Trustees' chosen forum was oppressive or vexatious to the Defendants out of all proportion to the Trustees' convenience. For the reasons that follow, we will affirm the District Court's dismissal of the Trustees' amended complaint on forum non conveniens grounds.

I.

A.

In 1999, Qwest and KPN B.V., a wholly-owned subsidiary of Dutch multimedia company Koniklijke KPN N.V., engaged in a joint venture and formed KPNQwest. KPNQwest was organized as a Dutch corporation, had its principal place of business in Hoofddorp, Netherlands, and was established to construct a European fiber optics telecommunications network. By 2002, KPNQwest was insolvent and filed for bankruptcy in a Dutch court.

As a result of the bankruptcy filing, Windt and Meijer were appointed by the Dutch bankruptcy court as trustees in bankruptcy for KPNQwest.[1] Pursuant to their official duties, the Trustees investigated the cause of KPNQwest's bankruptcy and brought this lawsuit on behalf of KPNQwest's bankruptcy estate. In June 2004, the Trustees filed a complaint in the United States District Court for the District of New Jersey. According to the complaint, the Defendants deceived KPNQwest's Supervisory Board about the financial solvency of KPNQwest in an effort to gain control of KPNQwest and manipulate its business to suit their objectives. The Trustees' complaint detailed a pattern of fraud, mismanagement and accounting improprieties that resulted in the ultimate failure of KPNQwest. Specifically, the complaint alleged one claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, and one claim of mismanagement and breach of duty based upon violations of the Dutch Civil Code.

The Trustees' complaint named Qwest, Nacchio, McMaster and Woodruff as defendants. Qwest is a Delaware corporation with its principal place of business in Colorado. Nacchio, a New Jersey resident, previously served as

---

[1] Originally, J.C. van Apeldoorn and E.T. Meijer were appointed as the trustees of the KPNQwest bankruptcy estate. Following his appointment, van Apeldoorn became ill, and Marcel Windt was substituted as a trustee.

Chairman and Chief Executive Officer of Qwest and as Chairman of the Supervisory Board of KPNQwest. McMaster, also a New Jersey resident, previously served as Qwest's Executive Vice President of International Business and was named by the Supervisory Board as KPNQwest's Chief Executive Officer. Woodruff, a Colorado resident, previously served as Chief Financial Officer of Qwest and was a member of KPNQwest's Supervisory Board.

On October 4, 2004, the Defendants moved to compel arbitration of the Trustees' claims. The motion was denied by a magistrate judge on June 16, 2005, and the Defendants appealed the denial to the District Court. On February 21, 2006, while the appeal to the District Court concerning the denial of the motion to compel arbitration was pending, the Defendants filed a motion to dismiss the Trustees' complaint on forum non conveniens grounds. On August 7, 2006, the District Court affirmed the magistrate judge's denial of the Defendants' motion to compel arbitration.[2]

On September 20, 2006, the Trustees filed an amended

_____

[2] The District Court's denial of the motion to compel arbitration is the subject of the Defendants' cross-appeal. Because we hold that the District Court did not abuse its discretion in dismissing the Trustees' amended complaint on forum non conveniens grounds, we will dismiss the cross-appeal as moot.

7

complaint that asserted the same essential facts and claims as their original complaint. The Defendants then notified the District Court that they would file a new motion to dismiss the amended complaint. The District Court deemed the prior motion to dismiss to be pending and, on October 17, 2006, dismissed the amended complaint on <u>forum non conveniens</u> grounds. The Trustees now appeal the District Court's dismissal of their amended complaint.

B.

In addition to this proceeding, other legal proceedings related to KPNQwest and the Defendants are currently pending, or were pending at the time the Trustees filed the instant complaint. Three lawsuits stemming from Qwest's relationship with KPNQwest have been filed in various U.S. state and federal courts. <u>Taft v. Ackermans</u>, No. 02-CV-7951 (S.D.N.Y.), was a putative securities class action lawsuit filed in the United States District Court for the Southern District of New York and settled in early 2006. <u>Grand v. Nacchio</u>, No. C-2002-5348 (Pima County Superior Ct.), is a securities opt-out action filed in 2002 in Arizona state court that involved the purchase of 285,000 shares of KPNQwest stock by a living trust. The trial court in <u>Grand</u> granted partial summary judgment in favor of the defendants. The plaintiffs voluntarily dismissed the remainder of their claims and appealed. Approximately one month after the District Court's dismissal in this case, the Arizona appellate court affirmed the trial

8

court in part, reversed in part, and remanded the case to the trial court for further proceedings. Grand v. Nacchio, 147 P.3d 763 (Az. Ct. App. 2006). Subsequent to the filing of this lawsuit, another securities opt-out action, Appaloosa Investment Ltd. P'ship I v. Qwest Commc'ns Int'l, Inc., No. 05-CV-5674 (S.D.N.Y.), was filed in the United States District Court for the Southern District of New York and is pending in that court.

Litigation and other proceedings related to KPNQwest also arose in the Netherlands following the filing of the Trustees' complaint in New Jersey. On August 23, 2005, several Dutch KPNQwest shareholders petitioned the Enterprise Chamber, a branch of the Civil Court in Amsterdam with jurisdiction over corporate mismanagement claims, to begin an inquiry into the cause of KPNQwest's bankruptcy. The Enterprise Chamber granted the request, and all of the Defendants named in this lawsuit are involved in the investigatory proceeding before the Enterprise Chamber.

Several weeks before the District Court dismissed this case, Cargill Financial sued three of the Defendants named by the Trustees and several other parties related to the formation and/or operation of KPNQwest in the Netherlands. In its complaint, Cargill Financial asserts that three of the defendants named here and others fraudulently procured credit in an attempt to avoid the bankruptcy from which this litigation arises.

9

Insurance litigation is also pending in the Netherlands. The insurance cases involve all of the parties to this lawsuit and concern the insurers' nullification of directors' and officers' insurance policies covering various individuals associated with KPNQwest. In these cases, the insurers allege that the directors' and officers' insurance policies were fraudulently procured through the same mismanagement alleged in this lawsuit. In addition, KPNQwest's bankruptcy proceedings are still ongoing in the Dutch courts.

II.

The District Court had jurisdiction in this case pursuant to 28 U.S.C. § 1331 and § 1367. We have jurisdiction over final orders of the District Court pursuant to 28 U.S.C. § 1291. Our review in this case, however, is limited.

"[T]he district court is accorded substantial flexibility in evaluating a forum non conveniens motion, and '[e]ach case turns on its facts.'" Van Cauwenberghe v. Biard, 486 U.S. 517, 529 (1988) (citations omitted). Furthermore, "[t]he forum non conveniens determination is committed to the sound discretion of the trial court." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981). This Court reviews a district court's dismissal of a complaint on forum non conveniens grounds for abuse of discretion. Id.; Lony v. E.I. Du Pont de Nemours & Co. ("Lony I"), 886 F.2d 628, 631 (3d Cir. 1989).

The district court's determination "may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." Piper Aircraft Co., 454 U.S. at 257. Thus, "we do not perform a de novo resolution of forum non conveniens issues." Lacey v. Cessna Aircraft Co. ("Lacey I"), 862 F.2d 38, 43 (3d Cir. 1988). "[A] district court abuses its discretion in a forum non conveniens analysis when it fails to consider adequately and to determine the amount of deference due the foreign plaintiff's choice of forum or when it clearly errs in weighing the factors to be considered." Lony I, 886 F.2d at 632 (internal citations omitted).

III.

The Supreme Court has articulated precepts applicable in forum non conveniens cases. Although "a plaintiff's choice of forum should rarely be disturbed," Piper Aircraft Co., 454 U.S. at 241, a federal court "may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 507 (1947). When an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would "establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience," or when the "chosen forum [is] inappropriate

11

because of considerations affecting the court's own administrative and legal problems," the court may, in the exercise of its sound discretion, dismiss the case. Koster v. (Am.) Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947).

To guide the trial court's exercise of discretion and its determination of oppressiveness and vexation, the Supreme Court has prescribed a balancing of private interest factors affecting the convenience of the litigants and public interest factors affecting the convenience of the forum. See Gulf Oil, 330 U.S. at 508-509. Factors pertaining to the private interests of the litigants include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Id. at 508. Public interest factors bearing on the inquiry include administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in "having the trial of a diversity case in a forum that is at home with the state law that must govern the case"; the avoidance of

unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. Id. at 508-509.

Applying these precepts to a particular case, when considering a motion to dismiss on forum non conveniens grounds, a district court must first determine whether an adequate alternative forum can entertain the case.[3] If such a forum exists, the district court must then determine the appropriate amount of deference to be given the plaintiff's choice of forum. Once the district court has determined the amount of deference due the plaintiff's choice of forum, the district court must balance the relevant public and private interest factors. If the balance of these factors indicates that trial in the chosen forum would result in oppression or vexation to the defendant out of all proportion to the plaintiff's convenience, the district court may, in its discretion, dismiss the case on forum non conveniens grounds.

---

[3] In this case, the District Court determined that the Netherlands provided an adequate alternative forum for the resolution of this dispute. Windt v. Qwest Commc'ns Int'l, Inc., ___ F. Supp. 2d ___, 2008 WL 877981, *7 (D.N.J. Mar. 28, 2008) (reissued for publication). The Trustees do not contest this finding, so we will not address this prong of the forum non conveniens analysis.

13

IV.

We first consider whether the District Court abused its discretion in assigning the Trustees' choice of forum a low degree of deference. Ordinarily, a strong presumption of convenience exists in favor of a domestic plaintiff's chosen forum, and this presumption may be overcome only when the balance of the public and private interests clearly favors an alternate forum. Piper Aircraft Co., 454 U.S. at 255. "When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference." Id. at 256. Foreign plaintiffs, however, may bolster the amount of deference due their choice by making a strong showing of convenience. Lony I, 886 F.2d at 634. Thus, in performing its forum non conveniens inquiry in a case filed by a foreign plaintiff, the "district court must assess[, and articulate,] whether the considerable evidence of convenience has . . . overcome any reason to refrain from extending full deference to the foreign plaintiff's choice." Id.

A.

After considering the evidence of convenience to the Trustees in filing their amended complaint in the District of New Jersey, the District Court accorded the foreign Trustees a low degree of deference:

14

It is illogical for a bankruptcy trustee to assert that it would be more convenient to bring an action thousands of miles away, while this trustee: (a) has to play a part in the related bankruptcy proceedings in his home forum, and (b) has his defendants already brought into his home forum on two other actions which are nearly identical in nature to the action the trustee desires to pursue, and in one of which the trustee has already been ordered to appear. Since one can hardly perceive any convenience in having multiple massive litigations on both sides of the Atlantic, this Court discerns little evidence of convenience to Plaintiffs in Plaintiffs' decision to file this action with this Court and, thus, accords Plaintiffs' forum selection a low degree of deference.

Windt v. Qwest Commc'ns Int'l, Inc., ___ F. Supp. 2d ___, 2008 WL 877981, *6 (D.N.J. Mar. 28, 2008) (reissued for publication).

The Trustees contend that their filing of this action in the Defendants' home forum strongly supports a finding that their choice was a convenient one, and thus they should be accorded the same deference as a domestic plaintiff. The Trustees direct our attention to our statement in Lony I:

The foreign plaintiff is suing the defendant in the latter's home forum where the latter's corporate headquarters, headquarters of the division in question, and research laboratories are located. That in itself has considerable weight in showing that the plaintiff[']s choice of forum was based on convenience. In addition, the plaintiff has taken pains to show that much of the evidence it needs to establish liability is located in the forum it chose, and the conduct that caused the alleged injury issued from [the chosen forum].

Lony I, 886 F.2d at 634.

B.

In determining the amount of deference due the Trustees' choice of forum, the District Court properly considered the particular circumstances of this litigation, including the Trustees' and Defendants' connections with New Jersey and the pending litigation in the Netherlands. The facts of this case differ from those of Lony I, in which the plaintiff, a German sole proprietorship, filed suit in the District of Delaware against a Delaware corporation that had its principal place of business in Delaware. Id. at 629-630. Although two individual defendants in this case are residents of New Jersey, that state is not the home forum of the corporate defendant or another individual defendant named in the Trustees' amended complaint. There is also no indication that evidence is concentrated in New Jersey, nor is there an

16

indication that a substantial amount of conduct giving rise to the instant dispute occurred in New Jersey. Thus, the forum chosen by the plaintiffs in <u>Lony I</u> had a more substantial relationship to the parties and events involved in that case than New Jersey has to the parties and events involved in this case. In the context of this particular issue, therefore, <u>Lony I</u> is not a proper analogue.

Furthermore, the Trustees are Dutch residents acting as representatives of an insolvent Dutch corporation. Beyond this litigation, the Trustees have no connections to New Jersey in their representative or personal capacities. At the time the Trustees brought this suit, they were already immersed in the Dutch bankruptcy proceedings involving KPNQwest. Considering the particular circumstances of this case, we are satisfied that the District Court did not abuse its discretion in according the Trustees' choice of forum a low degree of deference.

C.

In this case, two defendants were located in New Jersey and two were located in Colorado. The Trustees argue that these circumstances should not affect this Court's conclusion as to the convenience of filing in the District of New Jersey because "the <u>forum non conveniens</u> inquiry looks to contacts with the United States, not the state where the federal court is located." Appellants' Br. at 34 n.17. The

17

Trustees misconstrue the flexible forum non conveniens analysis. Although the relationship between the United States and a case generally should be considered, this does not mean that the relationship between the local federal court district and the case should not. Indeed, considerations of local inconvenience may be so strong as to a dwarf considerations of national convenience.

This comment warrants a caveat. Often, defendants, evidence and witnesses will be spread throughout numerous districts. It would be problematic if granting a motion to dismiss for forum non conveniens, based on local considerations, precluded a plaintiff from filing the suit in another, convenient district. Thus, the conclusion we reach in this case does not necessarily mean that this action may not be maintainable in another federal district. Whether an action dismissed by one federal court on forum non conveniens grounds is maintainable in another federal court would depend on various factors, including whether the possibility of a transfer under 28 U.S.C. § 1404(a) was considered by the District Court, see Mizokami Bros. of Arizona, Inc. v. Mobay Chemical Corp., 660 F.2d 712, 716-717 (8th Cir. 1981) (declining to apply res judicata or law of the case doctrine to a dismissal by a different district court on forum non conveniens grounds, when the other court did not consider whether transfer was appropriate), whether differences between the districts made one more convenient, see Pastewka v. Texaco, Inc., 565 F.2d 851, 854 (3d Cir. 1977)

18

(holding that a prior forum non conveniens dismissal in federal court in New York barred relitigation in federal court in Delaware where the plaintiffs conceded that both the objective legal criteria and the material facts underlying the application of those criteria were identical), and whether the first federal court grounded its decision on national or local considerations, see Villar v. Crowley Mar. Corp., 990 F.2d 1489, 1498 (5th Cir. 1993), abrogated on other grounds by Marathon Oil Co. v. Ruhrgas, 145 F.3d 211 (5th Cir. 1998) (affirming the application of res judicata to a different court's dismissal on forum non conveniens grounds when the other court "found that no forum in the United States was convenient").

V.

Although the Trustees' choice of forum was accorded a low degree of deference, the Defendants must nevertheless demonstrate that a forum non conveniens dismissal is warranted. To determine whether the Defendants adequately demonstrated that dismissal was warranted, we turn to the District Court's analysis of the oppression and vexation prong of the forum non conveniens inquiry. When an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would "establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience," or when the "chosen forum [is] inappropriate because of considerations affecting the court's

19

own administrative and legal problems," the district court may, in the exercise of its sound discretion, dismiss the case. <u>Koster</u>, 330 U.S. at 524. To guide its exercise of discretion, the district court must balance the relevant public and private interest factors and determine whether the balance of these factors favors dismissal of the case.

A defendant seeking dismissal on <u>forum non conveniens</u> grounds must show that the balance of the public and private factors "tips decidedly in favor of trial in the foreign forum." <u>Lacey v. Cessna Aircraft Co.</u> ("<u>Lacey II</u>"), 932 F.2d 170, 180 (3d Cir. 1991). "If, when added together, the relevant private and public interest factors are in equipose, or even if they lean only slightly toward dismissal, the motion to dismiss must be denied." <u>Id.</u> In this case, the District Court decided that the balance tipped decidedly toward trial in the Netherlands. We now review its analysis.

## A.

## 1.

We first examine the local nature of the dispute and the public interest in resolving local disputes locally. The District Court observed:

> [T]he case at bar concerns the allegations of
> fraud and mismanagement of a Dutch business

20

entity by a board member and executives of that corporation, and by that corporation's controlling holder. The fact that two of these defendants are domiciled in the state of New Jersey does not transform the case into a "local dispute," nor can the facts that four Board meetings took place somewhere in the United States and Defendants, while being present in the United States, took part in five international conference calls, cannot transform the case into an "American" dispute.

Windt, ___ F. Supp. 2d at ___, 2008 WL 877981, at *8 (emphases in original).

We agree with the District Court that the Trustees' complaint does not raise a local dispute. The Trustees' amended complaint alleges fraud and mismanagement perpetrated on a Dutch company by executives, board members and a corporate shareholder of that Dutch company. Although two of the defendants are residents of New Jersey, there are no allegations that actions or events occurring in New Jersey gave rise to the fraud and mismanagement at issue in this case. Moreover, without a dispute local to the community of New Jersey, there is little public interest in subjecting that community to the burdens of jury service. Cf. Dahl v. United Techs. Corp., 632 F.2d 1027, 1032 (3d Cir. 1980) ("The only contact that Delaware has with this case is

21

that it is [the defendant's] state of incorporation. Indeed, [the defendant's] principal place of business is in Connecticut. We therefore conclude that the commitment of Delaware judicial time and resources to this case is not justified by any nexus Delaware has with what is essentially a Norwegian case.").

In cannot be denied that the Netherlands has a substantial interest in resolving this dispute as it involves the alleged mismanagement of a Dutch company by Supervisory Board members and executives of that Dutch company. Indeed, Dutch shareholders of KPNQwest have successfully petitioned the Enterprise Chamber in the Netherlands to investigate the alleged mismanagement of the company. In light of New Jersey's lack of associations with this case and the Netherlands' substantial associations with this case, the District Court reasonably concluded that the non-local nature of the dispute and the burdens of jury service on the local community in resolving this non-local dispute favored dismissal of the Trustees' amended complaint.

## 2.

We next examine the necessity of applying foreign law and avoiding problems in its application. The Trustees assert one claim under the U.S. RICO statute and one claim of mismanagement and breach of fiduciary duty, implicating eleven provisions of the Dutch Civil Code. Federal courts have refused to afford RICO claims special treatment in

22

forum non conveniens inquiries and have found dismissal on this basis proper in cases involving RICO claims. See, e.g., Gemini Capital Group v. Yap Fishing Corp., 150 F.3d 1088 (9th Cir. 1998); Alfadda v. Fenn, 159 F.3d 41 (2d Cir. 1998); Republic of Panama v. BCCI Holdings (Luxemburg) S.A., 119 F.3d 935 (11th Cir. 1997); Kempe v. Ocean Drilling & Exploration Co., 876 F.2d 1138 (5th Cir. 1989). Were this case to remain in New Jersey, the District Court would be required to examine and apply eleven provisions of the Dutch Civil Code. On this basis, we cannot say that the District Court was unreasonable in concluding that avoiding problems in the application of foreign law favored dismissal.

3.

Although we recognize that the United States has an interest in redressing wrongful conduct engaged in by a U.S. corporation and American executives, this general national interest does not outweigh the limited connection between New Jersey and this dispute. See Dahl, 632 F.2d at 1033 ("This lawsuit has little connection to Delaware and we believe the general national interest in aircraft regulation is not sufficient by itself to warrant retention of jurisdiction over an action when the other factors favor dismissal."); Allstate Life Ins. Co. v. Linter Group Ltd., 994 F.2d 996, 1002 (2d Cir. 1993) ("While . . . United States courts have an interest in enforcing United States securities laws, this alone does not prohibit them from dismissing a securities action on the

23

ground of <u>forum non conveniens</u>.”). Considering all of the public interest factors implicated in this case, the District Court did not abuse its discretion in determining that the balance of these factors favored dismissal.

B.

1.

Turning to the private interest factors, we first examine the ease of access to evidence required in this case. Based upon the parties’ representations to this Court and to the District Court, it appears that the physical evidence in this case consists of thousands of boxes of documents. The Trustees do not challenge the District Court’s finding that “[t]he expenses and complexity associated with such production and examination appear[] to be the same regardless of whether the case is litigated in New Jersey or in Amsterdam.” <u>Windt</u>, ___ F. Supp. 2d at ___, 2008 WL 877981, at *9 n.24.

2.

We next examine the cost for willing witnesses to attend trial and the methods available for compelling the attendance of unwilling witnesses. Many of the witnesses required in this case are already embroiled in investigations and litigation in the Netherlands related to the insolvency of

24

KPNQwest. Thus, transportation and lodging costs may be saved by litigating this dispute in the Netherlands, where the presence of many witnesses relevant to this case is already required. Although the Trustees presented affidavits to the District Court identifying witnesses residing in the United States, almost all of the witnesses reside outside of New Jersey. The Defendants also presented affidavits to the District Court stating that many of the witnesses and potentially responsible non-parties reside in Europe. We conclude that the District Court reasonably determined that the logistics associated with obtaining the presence of willing witnesses favored dismissal of the Trustees' amended complaint.

Regarding compelling the presence of unwilling witnesses, the District Court found the procedures available in the Dutch courts adequate to ensure their presence. It determined that the Trustees "would have no more problem in compelling unwilling United States and European witnesses to take part in Dutch proceedings than what Defendants might face in trying to compel unwilling Netherlands-based or other European witnesses to take part in this Court's proceedings." Id. at ___, *11.

Although we do not believe this conclusion is unreasonable, the District Court erroneously noted that this consideration favored dismissal. Id. at ___, *10. As the District Court considered the burdens of compelling unwilling

25

witnesses to attend trial to be equal in New Jersey and the Netherlands, it should not have considered this particular factor as one favoring dismissal. Cf. Lony I, 886 F.2d at 635 ("When the [district] court found the private interest factors to be 'at equipose' . . . it should have concluded that they weighed in favor of retaining jurisdiction, not that they tipped 'toward dismissal.'"). As this portion of the forum non conveniens inquiry balances and weighs the relevant interests, however, we cannot say that the District Court abused its discretion when it determined that the totality of the private interest factors favored dismissal.

3.

We must also consider other factors that lead to the expeditious and efficient resolution of the litigation. One such factor is the Defendants' stated desire to pursue contribution claims against potentially responsible third parties in the Netherlands and other European countries. The District Court properly considered these claims and found that the Defendants' desire to pursue these claims favored dismissal. The Defendants' pursuit of contribution claims would result in additional, related litigation in the Netherlands, and resolving all of these matters in the Netherlands would lead to the most efficient and expeditious resolution of this dispute. See Piper Aircraft Co., 454 U.S. at 259 ("It is true, of course, that if [the defendants] were found liable after a trial in the United States, they could institute an action for indemnity or

26

contribution against [related third] parties in Scotland. It would be far more convenient, however, to resolve all claims in one trial."). Thus, the District Court properly decided that the Defendants' pursuit of contribution claims in the Netherlands favored dismissal of the Trustees' amended complaint.

As it appears that the District Court properly and thoroughly considered the particular circumstances presented by this litigation, we cannot conclude that the District Court abused its discretion in determining that the balance of the public and private interest factors clearly favored dismissal.

VI.

Guided by the aforementioned considerations, we will decide whether the District Court abused its discretion in finding that continuing with this litigation in New Jersey would be oppressive or vexatious to the Defendants in light of the convenience to the Trustees.

A.

Addressing the applicability of this portion of the forum non conveniens inquiry to this dispute, the District Court stated:

[U]nder the holding of Piper[ Aircraft Co.], the

27

defendant has to make an "oppressive or vexatious" showing <u>only in case if [sic] the plaintiff is suing in plaintiff's home forum.</u> Since there is no dispute that Plaintiffs in the instant action are <u>not</u> suing in their home forum, the "oppressive or vexatious" inquiry is inapplicable to the case at bar.

<u>Windt</u>, ___ F. Supp. 2d at ___, 2008 WL 877981, at *11 (internal citation omitted) (emphases in original). We agree with the Trustees that this statement is partly erroneous. <u>Piper Aircraft Co.</u> does not excuse a defendant from showing that litigating in the chosen forum would be oppressive or vexatious when the plaintiff is not suing in the plaintiff's home forum. <u>See</u> <u>Piper Aircraft Co.</u>, 454 U.S. at 241 (examining oppression and vexation and the district court's balancing of the relevant public and private interest factors in a case brought by Scottish plaintiffs). A defendant must show that litigation in the chosen forum is oppressive or vexatious regardless of whether the plaintiff brings suit in his home forum. The statement by the District Court concerning the inapplicability of the oppressive or vexatious requirement in this case does not comport with the principles governing the <u>forum non conveniens</u> inquiry. Notwithstanding its contrary prefatory statement, however, the District Court then proceeded to perform the oppressive or vexatious inquiry, and its actual consideration and analysis permits us to review its determination.

28

B.

The District Court considered the relevant public and private interest factors, as well as the extensive litigation pending in the Netherlands, when it determined that continuing with this lawsuit in New Jersey would be oppressive or vexatious to the Defendants:

> Given [that Defendants are involved in litigation in both New Jersey and the Netherlands], it is not surprising that Defendants see Plaintiffs' litigation in New Jersey as "oppressive or vexatious," since Defendants would be forced to stretch their resources over both sides of the ocean by: (1) hiring different counsel to meet two different sets of bar admission requirements and two different sets of procedural rules; (2) losing the opportunity to seek joinder of actions; (3) flying witnesses and themselves across the Atlantic both ways on a regular basis, thus incurring substantial travel and accommodation expenses; and (4) having to translate all relevant documents and testimony, etc. Viewed through the prism of conveniences available to Plaintiffs in Plaintiffs' home forum and potential dire exhaustion of Defendants' resources through a cluster of transatlantic litigations, Plaintiffs'

29

action appears to be "oppressive or vexatious," .
. . .

Windt, ___ F. Supp. 2d at ___, 2008 WL 877981, at *12.

1.

The Trustees contend that the District Court erred by considering Dutch litigation and investigations commenced subsequent to the filing of the instant lawsuit. The forum non conveniens doctrine, however, does not require a district court to ignore factors that may impact the analysis simply because the factors arose after the filing of the lawsuit. See Veba-Chemie A.G. v. M/V Getafix, 711 F.2d 1243, 1248 (5th Cir. 1983) ("The forum non conveniens analysis has never asked the courts to reconstruct and weigh[] the relative conveniences as they existed when plaintiff brought suit. Instead, the forum non conveniens inquiry – including the convenience, availability and adequacy elements – has always been conducted in the present tense."). That the Dutch proceedings were initiated after this lawsuit was filed does not make the considerations of convenience, oppression and vexation stemming from those proceedings less relevant, as they were pending at the time of the District Court's dismissal order._____

2.

30

The Trustees contend also that the District Court misunderstood the nature of the Dutch proceedings and their relation to this litigation. The Trustees characterize the Enterprise Chamber proceeding as "still in its formative stages and . . . not itself a civil litigation." Appellants' Br. at 46. The investigative nature of the Enterprise Chamber proceeding, however, does not lead to the conclusion that the District Court improperly considered the proceeding. See Dahl, 632 F.2d at 1030 (considering a then-pending investigation by the Norwegian Civil Aviation Administration in assessing the private interests of the parties relevant to the forum non conveniens analysis); Kryvicky v. Scandinavian Airlines Sys., 807 F.2d 514, 516 (6th Cir. 1986) (affirming the district court's analysis of the private interest factors, including its consideration of the implications of a Spanish investigation). Nothing in Piper Aircraft Co. or this Court's subsequent case law teaches that only civil litigation, as distinguished from formal investigations, may be considered in assessing the oppression and vexation suffered by a defendant.

The Trustees contend that the District Court erroneously concluded that the New Jersey proceeding and Cargill Financial litigation were significantly related. We disagree. The complaint filed by Cargill Financial in the Netherlands alleges that KPNQwest and several individuals intimately associated with KPNQwest (including Defendants Nacchio and McMaster) intentionally misrepresented

31

KPNQwest's financial status and solvency to Cargill Financial when KPNQwest sought to secure a credit facility from Cargill Financial. Cargill Financial's complaint also alleges that all of the defendants named in it were integral in creating or perpetuating the misrepresentations about KPNQwest's financial condition and "knew or should of known that KPNQwest's financial condition was not sound and its business plan not fully funded." App. JA1165. Although the Cargill Financial litigation focuses on one credit transaction, it appears to involve some of the same issues as this litigation, namely the Defendants' representations concerning KPNQwest's financial condition and the mismanagement of KPNQwest.

Additionally, the Trustees assert that the District Court's factual misunderstandings concerning the insurance suits in the Netherlands led to its erroneous conclusion about the similarities between the insurance litigation and this litigation. The insurers seek to be relieved of their insurance obligations because of the actions of the Supervisory Board and KPNQwest officials in misleading them and the public about the financial health of the company. The insurance litigation names all of the individuals in this lawsuit and contains many of the same issues raised in this litigation.

3.

Finally, the Trustees allege that the District Court

32

improperly ignored the U.S.-based, related litigation when it determined that litigation in New Jersey would be oppressive or vexatious. Taft v. Ackermans, filed in the Southern District of New York, was settled in early 2006. Thus, this litigation had terminated by the time the District Court issued its dismissal order in this case. Grand v. Nacchio was pending in the Arizona appellate courts after the trial court granted summary judgment in favor of the defendants (including Qwest, Nacchio and McMaster). Based on the record presented to the District Court, the issues presented in Grand do not appear to be as significant or substantial as this litigation or the litigation in the Netherlands.

We therefore conclude that the District Court did not abuse its discretion when it determined that litigating this dispute in New Jersey would be oppressive or vexatious to the Defendants and that such oppression or vexation outweighed the convenience to the Trustees in litigating this dispute in New Jersey.

\* \* \* \* \*

Having considered all of the Trustees' contentions raised in this appeal, we are satisfied that the District Court did not abuse its discretion in according the Trustees' forum choice a low degree of deference, that the District Court did not abuse its discretion in balancing the public and private interest factors, and that the District Court did not abuse its

33

discretion in determining that continuing with this lawsuit in New Jersey would be oppressive or vexatious to the Defendants out of all proportion to the convenience of the Trustees.

Accordingly, we will affirm the District Court's dismissal of the Trustees' amended complaint. The Defendants' cross-appeal concerning the denial of its motion to compel arbitration will be dismissed as moot.