**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2042
_____

MAXIMA ACUNA-ATALAYA;
DANIEL CHAUPE-ACUNA;
JILDA CHAUPE-ACUNA;
CARLOS CHAUPE-ACUNA;
YSIDORA CHAUPE-ACUNA,
personally and on behalf of her minor child M.S.C.C.;
MARIBEL HIL-BRIONES;
ELIAS CHAVEZ-RODRIGUEZ,
personally and on behalf of his minor child M.S.C.C.,

Appellants

v.

NEWMONT MINING CORPORATION;
NEWMONT SECOND CAPITAL CORPORATION;
NEWMONT USA LIMITED;
NEWMONT PERU LIMITED
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1-17-cv-01315)
District Judge: Honorable Gerald A. McHugh
_____

Submitted Under Third Circuit LAR 34.1(a)
January 24, 2019

Before: JORDAN, KRAUSE, and ROTH, *Circuit Judges*

(Opinion filed: March 20, 2019)

OPINION[*]

KRAUSE, *Circuit Judge*.

Appellants challenge the District Court's *forum non conveniens* dismissal of their complaint, which would send their dispute over a parcel of Peruvian land back to Peru. Without addressing the merits of Appellants' challenge, we will remand for the District Court to reevaluate whether Peru is an adequate alternative forum in light of a supervening corruption scandal that has prompted the Peruvian judiciary and Peru's Congress to declare a state of emergency.

## I. Background

This case arises from a conflict over a tract of land in Cajamarca, Peru between a family of Peruvian farmers residing on the land (Appellants) and several Delaware-incorporated entities—Newmont Mining Corporation, Newmont Second Capital Corporation, Newmont USA Ltd., and Newmont Peru Ltd. (collectively, "Newmont")—that own a mining company operating in the region. Appellants brought suit in the District of Delaware contending that Newmont's agents have used violence and other illegal tactics to evict them from their farm, which sits on top of a gold deposit. They opted not to proceed in Peru and, instead, to seek relief in Delaware because they assert that the Peruvian courts, including the trial courts in Cajamarca, are corrupt and will not

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

fairly adjudicate their case. According to Appellants, Newmont has already exercised improper influence over prosecutors, judges, and other government actors in Peru.

In October 2017, Newmont moved for dismissal on *forum non conveniens* grounds, asserting that the sources of proof and the key witnesses are located in Cajamarca. The District Court granted the motion and dismissed the complaint on April 11, 2018, concluding that—notwithstanding Appellants' allegations of corruption—Peru was an adequate alternative forum and the relevant *forum non conveniens* criteria otherwise favored dismissal. *See Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 160 (3d Cir. 2010) (identifying the relevant factors in a *forum non conveniens* inquiry). This appeal followed, and for the reasons set forth below, we will remand for the District Court to reconsider its prior determination that Peru is an adequate forum.

## II. Discussion[1]

If changed factual circumstances "cast a different light on a[] [district court's] earlier ruling," regardless of its correctness when made, an appellate court may reverse the ruling and remand. *United States v. Wilson*, 601 F.2d 95, 98–99 (3d Cir. 1979); *see Bank of Credit & Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan*, 273 F.3d 241, 247 (2d Cir. 2001) (noting that where a district court dismisses a complaint on *forum*

---

[1] The District Court exercised subject matter jurisdiction under 28 U.S.C. § 1332(a)(2), and this Court has subject matter jurisdiction under 28 U.S.C. § 1291. We review a district court's dismissal of a complaint on *forum non conveniens* grounds for abuse of discretion. *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008).

3

*non conveniens* grounds, and such changed circumstances materially affect the district court's prior assessment of the proposed alternative forum, it is often "prudent to vacate the district court's dismissal order and remand, so that the district court can consider the implications" of those changes).

Here, although the District Court meticulously reviewed the then-existing record and engaged in a rigorous analysis, there have been significant factual developments post-dating its dismissal that cast its ruling in a different light. In mid-2018, a set of secretly recorded phone conversations among Peruvian judges and judicial officials surfaced, revealing a disturbing series of improper quid pro quo exchanges, including an offer by a Supreme Court judge to reduce a prison sentence for an unidentified personal favor.[2] Citing the "institutional crisis," even the head of Peru's Supreme Court stepped down, although he was not personally accused of any wrongdoing.[3] This widening scandal also prompted the Peruvian Judicial Branch to declare a ninety-day state of

---

[2] *See* Rebecca Tan, *Leaked calls reveal systemic corruption in Peru's judiciary, sparking flurry of resignations*, Washington Post (July 20, 2018), https://www.washingtonpost.com/news/worldviews/wp/2018/07/20/leaked-calls-reveal-systemic-corruption-in-perus-judiciary-sparking-flurry-of-resignations. As with this and the sources referenced below, "we may take judicial notice at any stage of the proceeding of a fact not subject to reasonable dispute that is capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned." *Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 600 n.3 (3d Cir. 2000).

[3] Marco Aquino, *Head of Peru's judiciary resigns as crisis grips justice system*, Reuters (July 19, 2018, 2:14 PM), https://www.reuters.com/article/us-peru-corruption-resignation/head-of-perus-judiciary-resigns-as-crisis-grips-justice-system-idUSKBN1K92OH.

emergency starting in July of 2018.[4]  And around the same time, Peru's Congress declared a nine-month state of emergency—still in effect—for Peru's National Magistrates Council, the body that appoints judges and prosecutors.[5]  Following these state-of-emergency declarations, Peru's president issued a statement that the Peruvian "system for administering justice has collapsed" and proposed a slate of reforms aimed at curtailing corruption.[6]

These developments may bear on the District Court's conclusions about the Peruvian judiciary's impartiality.  For example, the District Court discounted an older well-publicized story about Newmont successfully pressuring a Peruvian Supreme Court judge to rule favorably in its case, reasoning that "the events in question occurred some 18 years ago, around the time when the regime of an infamously corrupt president . . . imploded[,] [and] [t]he interim regime change and noted improvements since" mitigate concerns about similar events recurring.  *Acuna-Atalaya v. Newmont Mining Corp.*, 308 F. Supp. 3d 812, 823–24 (D. Del. 2018).  The recent exposure of corruption among the judicial system's top ranks and the two resulting state-of-emergency declarations call into

---

[4] *See Peru declares emergency at Judicial Branch*, Andina (July 18, 2018, 1:25 PM), https://andina.pe/ingles/noticia-peru-declares-emergency-at-judicial-branch-717943.aspx.

[5] *See Peru's congress declares judiciary in state of emergency*, LatinNews (July 24, 2018), https://www.latinnews.com/component/k2/item/76979.html?period=2018&archive=1&cat_id=813281:peru-s-congress-declares-judiciary-in-state-of-emergency; Aquino, *supra*.

[6] *Peru sets referendum to 'legitimize' reforms after scandal*, New Straits Times (July 29, 2018, 7:46 AM), https://www.nst.com.my/world/2018/07/395569/peru-sets-referendum-legitimize-reforms-after-scandal.

question these "noted improvements." Similarly, Appellants assert that, in criminal proceedings against them in Peru, Newmont's lawyer hand-delivered the guilty sentence to the Peruvian judge who, after issuing the sentence, admitted that Newmont had given an "economic benefit" to the prosecutor to bring the case against Appellants. *Id.* at 824. Though the District Court found this account "troubling," the Court's concerns were mitigated in part by the fact that Appellants had achieved some "success . . . in the appellate courts [of Peru]." *Id.* at 825. But the recent disclosures raise the specter of corruption in the appellate courts of Peru and undermine confidence that they can serve as a protection against Newmont's alleged capture of the lower courts.

Moreover, Appellants have offered other particularized evidence regarding Appellees' influence in those courts, such as the account of Appellants' attorney in Peru, who pointed out multiple examples of suspicious court behavior in the criminal proceedings discussed above, including the court's refusal to accept some of her evidence and the fact that the prosecutors received a copy of the judgment before she did. *See id.* at 824. While the publicity around the recent scandal has not centered on Cajamarca trial courts, a factfinder could conclude that this case-specific evidence carries greater weight in the context of a judicial system permeated by corruption problems than it would in the absence of such problems. Because the *forum non conveniens* inquiry is generally "committed to the sound discretion of the trial court," *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981), we leave it to the District Court to assess in the first instance whether and to what extent these developments affect its conclusions here.

As the District Court undertakes this analysis on remand, we trust it will be

6

mindful of the proper allocation of the burden of proof and the standards that must be satisfied, including that the burden of persuasion on a *forum non conveniens* motion lies with the defendant. *See Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43–44 (3d Cir. 1988). At the outset, the defendant must show that "there exists an alternative forum," a requirement which "[o]rdinarily . . . will be satisfied when the defendant is 'amenable to process' in the other jurisdiction," *Piper Aircraft*, 454 U.S. at 254 n.22 (citation omitted), and "dismissal on grounds of *forum non conveniens* may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery," *id.* at 250. However, "[i]n [the] rare circumstance[] . . . where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative," *id.* at 254 n.22, such as where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all," *id.* at 254, or—as relevant here—where the plaintiff "will be . . . treated unfairly," *id.* at 255.

While the Supreme Court has not yet spoken to particular burdens or standards associated with a plaintiff's assertion of unfair treatment in this context, the Eleventh Circuit has done so, offering a logical and persuasive approach: "defendants have the ultimate burden of persuasion, but only where the plaintiff has substantiated his allegations of serious corruption or delay. . . . [W]here the allegations are insubstantially supported, . . . a District Court may reject them without considering any evidence from the defendant. But where the plaintiff produces significant evidence documenting the partiality or delay (in years) typically associated with the adjudication of similar claims and these conditions are so severe as to call the adequacy of the forum into doubt, then

the defendant has the burden to persuade the District Court that the facts are otherwise." *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1312 (11th Cir. 2001); *see also Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 756 (S.D.N.Y. 2004) ("In contrast with general allegations of corruption, the possibility that the Sovereign defendants could dictate the outcome of this dispute through their control over Azeri courts would effectively foreclose the plaintiffs' right to pursue their claims and render the Azerbaijan courts an inadequate forum.").

The District Court in this case carefully reviewed the record then before it and helpfully facilitated appellate review by laying out its reasoning in a thorough and thoughtful opinion. We appreciate those efforts and will leave it to the District Court, bearing in mind the relevant burdens and taking account of the recent developments in Peru, to consider the record as supplemented and to rule on the adequacy of the proposed alternative forum.

## III. Conclusion

For the aforementioned reasons, we will vacate the District Court's April 11, 2018 order and will remand for proceedings consistent with this opinion.