**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 09-1202

_____

DELTA AIR LINES,  INC.,

Appellant

v.

CHIMET, S.P.A.;
JOHNSON MATTHEY, INC.

_____

On Appeal from the United Stated District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 07-cv-02898)
District Judge:  Honorable Harvey Bartle, III

_____

Argued February 22, 2010

Before:  SCIRICA and CHAGARES, <u>Circuit</u> <u>Judges</u>, and
RODRIGUEZ, <u>District</u> <u>Judge</u>.[*]

(Filed: August 30, 2010)


James C. Stroud, Esq. (argued)
Rawle & Henderson, LLP
One South Penn Square
Philadelphia, PA 19107
        *Counsel for Appellant*

_____

[*]The Honorable Joseph H. Rodriguez, Senior District Judge
for the District of New Jersey, sitting by designation.

Adam D. Mitzner, Esq. (argued)
Jonathan A. Selva, Esq.
Pavia & Harcourt LLP
600 Madison Avenue
New York, NY 10022-1653

David M. Laigaie, Esq.
Mariana Rossman, Esq.
Dilworth Paxson LLP
3500 Market Street
Suite 3500 E
Philadelphia, PA 15219
     *Counsel for Appellee*

_____

OPINION

_____

CHAGARES, <u>Circuit</u> <u>Judge</u>.

Plaintiff Delta Airlines, Inc. ("Delta") appeals from the District Court's dismissal of this declaratory judgment action on <u>forum</u> <u>non</u> <u>conveniens</u> grounds. Defendant Chimet, S.p.A. ("Chimet") shipped approximately 100 kilograms of pure platinum with Delta from Milan, Italy to Philadelphia, Pennsylvania. The shipment of platinum arrived in Philadelphia but was reported stolen before reaching its ultimate destination. Delta filed a complaint in the District Court, seeking a declaration that its liability for this loss was limited pursuant to Article 22(3) of the Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on May 28, 1999 (the "Montreal Convention" or the "Convention"). The District Court granted Chimet's motion to dismiss the action on <u>forum</u> <u>non</u> <u>conveniens</u> grounds, concluding that critical documents, witnesses, and third parties relevant to the dispute would only be available in Italy and that the location of the alleged culpable conduct was in Italy. For the reasons that follow, we will affirm.

2

I.

Chimet is an Italian company without any "offices, property, or representatives in the United States of America." Appendix ("App.") 131. On April 21, 2007, Chimet hired Delta to carry cargo consisting of over 100 kilograms of pure platinum from Italy to Philadelphia, Pennsylvania for delivery to Johnson Matthey, Inc. ("Johnson Matthey"). Chimet worked with several Italian intermediaries to perform the shipment. Chimet appointed Arexpress to arrange for the transportation of the platinum to Johnson Matthey. App. 115. Arexpress retained Securpol Vigilantes to pick up the platinum from Chimet's factory. App. 116. Securpol Vigilantes delivered the platinum to Vicenza Sped, which transported the platinum from Vicenza, Italy to Malpensa Airport in Milan. Id. At the airport, Vicenza consigned the platinum to Delta's agent, Malpensa Logistica Europea S.p.A. Id. Delta then transported the platinum to Philadelphia, via Atlanta, Georgia. Before the platinum was delivered to Johnson Matthey, however, it was reported stolen.

The Montreal Convention, which governs the international carriage of passengers, baggage, and cargo, limits Delta's liability for the loss of cargo to a specified amount per kilogram – an amount much lower than the actual value of the platinum in this case – unless Chimet declared a higher value when it consigned the goods. The parties dispute whether Chimet declared a higher value.

Much of the dispute focuses on the meaning of two documents that were generated in connection with the shipment: an air waybill, printed on a standard International Air Transporation Association (IATA) form, App. 96-97, and a document known as a distinta consegna merce, which we will refer to as a delivery receipt, App. 94. The waybill form includes fields that appear to be designed to allow the consignor to designate values for the cargo. In the field labeled as "Declared Value for

3

Carriage," the waybill lists the letters "NVD." App. 96.[1] Delta claims that this abbreviation signifies "No Value Declared." App. 140. Chimet disagrees with this interpretation, asserting that Italian witnesses will need to testify at trial regarding the meaning of this entry. Chimet Br. at 21.

The waybill also includes several entries that appear to detail the contents of the shipment. In a field labeled "Nature and Quantity of Goods (incl. Dimensions or Volume)," the waybill includes an indication that the goods are "PURE PLATINUM." App. 96. In the area under this description of the goods as pure platinum, the following information is printed:

> VAL VAL VAL VAL
> THE FINAL TRANSPORTATION FROM THE AIRPORT TO THE CONSIGNEE'S ADDRESS MUST BE PERFORMED BY CUSTOMS BROKERS OR SPECIALISED COURIERS TO FORWARD VALUABLE CARGO

Id. Chimet suggests that this entry "indicates [its] intent to declare the valuable nature of the cargo." Chimet Br. at 21. Indeed, the delivery receipt, discussed in greater detail below, indicates a value for the shipment of €3,050,000.[2] App. 94.

Delta claims that if Vicenza Sped had attempted to declare a value for carriage of €3,050,000, it would not have accepted the shipment because Delta's tariff rules limit the value that can be declared for a single shipment to $100,000. App. 141. Delta also asserts that if Vicenza Sped had been able to declare this value, the "valuation charge" would have been €22,885.52, or approximately $30,000.00. App. 140-41. In addition, Delta contends that the entry "VAL AP Fees 140.47 Euros" entered in the field labeled

---

[1] The same letters are listed in the field labeled "Declared Value for Customs." App. 96. In addition, the entry "N.I.L." is listed in the field labeled "Amount of Insurance." Id.

[2] According to Chimet, the value of the shipment exceeded $4 million. Chimet Br. at 1.

4

"Insurance Premium" could not represent a request for insurance in the amount of €3,050,000. App. 142-43. Had there been such a request, Delta maintains, "the premium would have been $24,000.00, not $185.00," the amount that appears on the waybill. App. 143. Delta interprets the entry that appears in the "Insurance Premium" field as a spillover from the "Other Charges" field directly above. See id. ("The 140.47 Euro amount shown reflects a portion of certain miscellaneous 'other charges' due carrier, which total 218.52 Euros. These other charges were a 5.31 Euros 'airport tax'; a fuel surcharge of 72.27 Euros and a valuable handling charge made by the export warehouse in Milan of 140.47 Euros.").

The reverse side of the waybill form includes a number of legal notices. App. 97. At the top of the page, a capitalized notice states that under the Warsaw Convention (which preceded the Montreal Convention), the carrier's liability is limited in the case of loss unless a higher value is declared in advance and a supplementary charge paid if required. Id. In addition, under the heading "CONDITIONS OF CONTRACT," the following provisions are listed:

> 4.    Except as otherwise provided in carrier's tariffs or conditions of carriage, in carriage to which the Warsaw Convention does not apply, carrier's liability shall not exceed USD 20.00 or the equivalent per kilogram of goods lost . . . .

> 5.    If the sum entered on the face of the air waybill as "Declared Value for Carriage" represents an amount in excess of the applicable limits of liability referred to in the above Notice and in these Conditions and if the shipper has paid any supplementary charge that may be required by the carrier's tariffs, conditions of carriage or regulations, this shall constitute a special declaration of value and in this case carrier's limitation of liability shall be the sum so declared.

5

Id.

The parties also dispute the significance of the delivery receipt, a one-page document printed primarily in Italian on a Vicenza Sped form. App. 94. The delivery receipt appears to list the number of the air waybill, 006 4899 1622, the weight of the cargo, the destination, and the carrier. Id. It also includes an entry containing the following figure: "EU 3.050.000,00." Id. Chimet interprets this entry as a declaration of value. See App. 116 ("Delta received a delivery receipt from Vicenza Sped for the Platinum that listed the value of the Platinum as €3,050,000.00."). Delta contends that the delivery receipt "only confirms that the shipment was delivered to Delta's agent." App. 142. According to Delta, the delivery receipt "is not a transportation document and does not indicate a request for a declared value for carriage." Id.

Chimet "denies that it did not make a declaration of value and did not pay the relative surcharge since the delivery receipt, which was received by Delta, lists the value of the Platinum as €3,050,000.00 and the air waybill shows that additional transportation costs were paid." App. 118. Chimet claims that testimony from individuals at Arexpress, Securpol, and Vicenza Sped would confirm its interpretation of the waybill and delivery receipt and provide additional information regarding the instructions for shipping the platinum and the creation of the documents. Id. Chimet represents that all of these individuals are citizens and residents of Italy, without any contacts with the United States, and that their testimony can therefore only be obtained in Italy. App. 119.

Delta initiated this declaratory judgment action by filing a complaint in the United States District Court for the Eastern District of Pennsylvania on July 13, 2007. By order dated December 19, 2008, the District Court granted Chimet's motion to dismiss on forum non conveniens grounds. App. 4. The District Court began its analysis by determining that Italy presented an adequate alternative forum. App. 10. The court concluded that since Delta had filed the action in its home forum, the United States, this choice of forum would be accorded "considerable deference." App. 11. With this deference in mind, the District

6

Court applied the factors set forth by the Supreme Court in <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501 (1947). The District Court determined that since a number of important witnesses might only be available if the trial were held in Italy, some of the relevant documents were located in Italy and written in Italian, and several third parties could only be joined in Italy, the "private interest factors" weighed in favor of granting the motion. <u>See</u> App. 31-33. Applying the "public interest factors," the District Court concluded that although the "administrative difficulties flowing from court congestion is a neutral factor," the "locus of the alleged culpable conduct is Italy," and "the local interest in having localized controversies decided at home favors dismissal of this action." App. 34. The District Court therefore concluded, <u>inter alia</u>, that "a trial in the United States would be oppressive and vexatious to Chimet out of all proportion to the convenience of Delta" and that the action should be dismissed. App. 34. Delta timely appealed.

II.

The District Court had jurisdiction over this action arising under the Montreal Convention pursuant to 28 U.S.C. § 1331, and we have jurisdiction over the final judgment dismissing the action pursuant to 28 U.S.C. § 1291. We review a dismissal on <u>forum non conveniens</u> grounds for abuse of discretion. <u>Windt v. Qwest Commc'ns Int'l, Inc.</u>, 529 F.3d 183, 189 (3d Cir. 2008). "[T]he district court is accorded substantial flexibility in evaluating a <u>forum non conveniens</u> motion, and '[e]ach case turns on its facts.'" <u>Van Cauwenberghe v. Biard</u>, 486 U.S. 517, 529 (1988) (quoting <u>Williams v. Green Bay & W. R.R. Co.</u>, 326 U.S. 549, 557 (1946) (citation omitted)). A district court's decision to dismiss for <u>forum non conveniens</u> "may be reversed only when there has been a clear abuse of discretion; where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 257 (1981). A district court abuses its discretion only "when it fails to consider adequately and to determine the amount of deference due the foreign plaintiff's choice of forum or when it clearly errs in weighing the factors to be considered." <u>Lony v. E.I. Du Pont de Nemours & Co.</u>, 886 F.2d 628, 632 (3d Cir. 1989).

III.

The Supreme Court has directed that "a plaintiff's choice of forum should rarely be disturbed." Piper Aircraft, 454 U.S. at 241. However, a district court may dismiss an action based on forum non conveniens if "an alternative forum has jurisdiction to hear the case," and trial in the plaintiff's chosen forum "would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,'" or the "'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems' . . . ." Id. (quoting Koster v. Lumbermens Mut. Cas. Co., 330 U.S. 518, 524 (1947)).

Although "the decision to grant or deny a forum non conveniens motion lies within the district court's sound discretion," the court's decision "'should be an exercise in structured discretion founded on a procedural framework guiding the district court's decision making process.'" Lacey v. Cessna Aircraft Co., 862 F.2d 38, 43 (3d Cir. 1988) (quoting In re Air Crash Disaster Near New Orleans, La. on July 9, 1982, 821 F.2d 1147, 1165 (5th Cir. 1987)). The court must first decide whether an adequate alternative forum exists to hear the case. Lony, 886 F.2d at 633 (citing Lacey, 862 F.2d at 43). The court must then evaluate the amount of deference due to the plaintiff's choice of forum. Id. Finally, the court must "consider and balance" the private and public interest factors set forth in Gilbert. Id. The list of Gilbert factors to be balanced "is by no means exhaustive, and some factors may not be relevant in the context of a particular case." Van Cauwenberghe, 486 U.S. at 528-29. The defendant bears the burden of persuasion at each stage in the analysis, and a district court abuses its discretion if it fails to hold the defendant to its burden. Lacey, 862 F.2d at 43.

Delta does not contest the adequacy of the alternative forum. However, Delta argues that the District Court abused its discretion by according insufficient deference to Delta's choice of forum and in its application of the Gilbert factors.

A.

Delta first argues that the District Court abused its discretion

8

through the level of deference it applied to Delta's choice of forum. "Ordinarily, a strong presumption of convenience exists in favor of a domestic plaintiff's chosen forum, and this presumption may be overcome only when the balance of the public and private factors clearly favors an alternate forum." Windt, 529 F.3d at 190 (citing Piper Aircraft, 454 U.S. at 255). Consistent with this established precedent, the District Court concluded that Delta's choice of forum should be afforded "considerable deference." App. 27.

Delta suggests that despite the District Court's unambiguous statement regarding the level of deference, "no deference was apparent from the reasoning stated" in the District Court's opinion. Delta Br. at 12. Delta argues that the District Court erred by "merely restat[ing] the rules pertaining to deference, a tactic which does not satisfy the District Court's obligation to address deference." Id. Indeed, in Lony, we held that the District Court abused its discretion by failing to explain how much deference should be given the plaintiff's choice of forum, instead merely "restating the rule and filling in the names of the parties." 886 F.2d at 634.

Unlike in Lony, the District Court in this case did evaluate Chimet's arguments that Delta's choice of forum deserved no deference, disagreed with this position, and then noted explicitly that it granted "considerable deference" to Delta's choice of forum. App. 27. Given this statement, Delta's only possible argument is that the District Court did not actually apply the level of deference that it stated it was applying. Delta obviously disagrees with the District Court's ultimate determination that the case should be dismissed, but this does not establish that the District Court failed to apply the proper level of deference. Delta's forum choice "should not be given dispositive weight." Piper Aircraft, 454 U.S. at 255 n.23. Although citizens "deserve somewhat more deference than foreign plaintiffs, . . . dismissal should not be automatically barred when a plaintiff has filed suit in his home forum." Id. "As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." Id.

The District Court explained that it had granted Delta's

9

choice of forum considerable deference but that the balance of conveniences nonetheless warranted dismissal. Other than its own ipse dixit, Delta has nothing to substantiate its suspicions that the District Court was merely paying lip service to the governing standard. We conclude that the District Court did not abuse its discretion in determining the level of deference to be accorded to Delta's choice of forum.

B.

Delta's second argument is that the District Court erred in its application of the Gilbert factors. In Gilbert, the Supreme Court "provided a list of 'private interest factors' affecting the convenience of the litigants, and a list of 'public interest factors' affecting the convenience of the forum." Piper Aircraft, 454 U.S. at 241 (quoting Gilbert, 330 U.S. at 508-09). The private interest factors affecting the convenience of the litigants include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

Gilbert, 330 U.S. at 508; see Piper Aircraft, 454 U.S. at 241 n.6. The public interest factors affecting the convenience of the forum include:

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

10

Piper Aircraft, 454 U.S. at 241 n.6 (quoting Gilbert, 330 U.S. at 509). Delta argues that the District Court erred in its application of both sets of factors.

1.

We begin by analyzing the private interest factors that supported the District Court's conclusion that Italy would be a significantly more convenient forum for the litigants. The District Court concluded that "[a]ll of the evidence regarding the communications between Chimet and Delta, the meaning of the term 'VAL VAL VAL VAL,' and whatever documentary evidence exists outside of the air waybill and delivery receipt is in Italy." App. 31-32. The court also noted that Chimet would need to depose third-party witnesses who reside in Italy, speak only Italian, and are beyond the scope of the Court's subpoena power. App. 32. The court further reasoned that "all of the documentary evidence, other than the waybill and receipt, memorializing the involvement of Chimet, Arexpress, Securpol Vigilantes, Vicenza Sped, and Malpensa Logistica Europea S.p.A. is located in Italy and will be in Italian." App. 32-33. The District Court therefore concluded that these private interest factors supported dismissal.

Delta counters that none of the evidence cited by the District Court is actually necessary to adjudicate the dispute. It contends that the dispute can be resolved by applying the Montreal Convention's liability provisions to a single contractual document: the air waybill. Delta therefore argues that the District Court's analysis was based on the faulty premise that additional evidence would need to be gathered in Italy. We have explained that for the ease of access to evidence to enter the Gilbert analysis, the evidence in question must actually be relevant to resolving the dispute:

> In examining the relative ease of access to sources of proof, and the availability of witnesses, the district court must scrutinize the "substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even

11

relevant to, the plaintiff's cause of action and to any potential defenses to the action."

Lacey, 862 F.2d at 46 (quoting Van Cauwenberghe, 486 U.S. at 528); accord Lony, 886 F.2d at 635-36.  If resolution of Delta's claim under the Montreal Convention did not require looking beyond the air waybill, as Delta argues, then the District Court should not have considered Chimet's asserted need to gather additional evidence in Italy.  We must examine how the transactional documents in the record fit within the contractual scheme created by the Montreal Convention to evaluate Delta's argument.

"When interpreting a treaty, we begin with the text of the treaty and the context in which the written words are used." Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699 (1988) (quotation marks omitted).  The Montreal Convention limits the carrier's liability for loss of cargo, unless the consignor declares a higher value:

> In the carriage of cargo, the liability of the carrier in the case of destruction, loss, damage or delay is limited to a sum of 17 Special Drawing Rights per kilogramme, unless the consignor has made, at the time when the package was handed over to the carrier, a special declaration of interest in delivery at destination and has paid a supplementary sum if the case so requires.  In that case the carrier will be liable to pay a sum not exceeding the declared sum . . . .

Art. 22(3).  The Convention does not specify how this "special declaration of interest" is to be documented, but it does require the delivery of a document, typically an air waybill, to preserve the record of carriage.  See Art. 4(1) ("In respect of the carriage of cargo, an air waybill shall be delivered."); Art. 4(2) ("Any other means which preserves a record of the carriage to be performed may be substituted for the delivery of an air waybill.").  If a document other than a waybill is used to preserve the record of carriage, "the carrier shall, if so requested by the consignor, deliver

12

to the consignor a cargo receipt permitting identification of the consignment and access to the information contained in the record preserved by such other means." Art. 4(2). The Convention specifies certain information that must be included in the air waybill or cargo receipt, including "an indication of the places of departure and destination," and "an indication of the weight of the consignment." Art. 5. The consignor is responsible for the accuracy of the information in the air waybill or cargo receipt, Art. 10(1), even if the carrier "makes out the air waybill . . . on behalf of the consignor," Art. 7(4). Accordingly, "[t]he consignor shall indemnify the carrier against all damage suffered by it, or by any other person to whom the carrier is liable, by reason of the irregularity, incorrectness or incompleteness" of the information "furnished by the consignor or on its behalf." Art. 10(2). The Convention also provides that "[t]he air waybill or the cargo receipt is prima facie evidence of the conclusion of the contract, of the acceptance of the cargo, and of the conditions of carriage mentioned therein." Art. 11(1).

Delta argues that under these Montreal Convention provisions, this case can be decided solely by reference to the air waybill. As set forth above, the Convention designates the air waybill or cargo receipt as the primary mechanisms for recording the conditions of carriage. The Convention also provides that the consignor is responsible for creating the air waybill, see Art. 7(1) ("The air waybill shall be made out by the consignor . . . ."), for the accuracy of the air waybill, and for any damages caused by inaccuracies in the air waybill. Art. 10. Based on these provisions, Delta argues that Chimet failed to fulfill its responsibility to declare "a special declaration of interest" under Article 22(3).

We agree that Chimet failed to document in the waybill that it made a special declaration of interest or paid a supplemental sum. The waybill does not include any explicit reference to a declared value, and Chimet was responsible for completing the waybill and verifying its accuracy. We also agree with Delta's general contention that an air waybill typically functions as the primary mechanism for documenting the terms of carriage. We disagree, however, that this dispute can be conclusively resolved solely by examining the air waybill.

13

As the District Court recognized, the air waybill includes conflicting and inconsistent information. The air waybill describes the goods as "PURE PLATINUM" and includes the following entry:

VAL VAL VAL VAL
THE FINAL TRANSPORTATION FROM THE AIRPORT TO THE CONSIGNEE'S ADDRESS MUST BE PERFORMED BY CUSTOMS BROKERS OR SPECIALISED COURIERS TO FORWARD VALUABLE CARGO

App. 96. Although the meaning of the "VAL VAL VAL VAL" is not clear, the reference to valuable cargo supports Chimet's contention that it declared a higher value for the shipment. Chimet has also produced an affidavit stating that the "air waybill shows that additional transportation costs were paid." App. 118.

The delivery receipt constitutes documentary evidence that Chimet may have declared a value of €3,050,000.00 for the shipment. Chimet asserts that when Delta received the shipment, it also "received a delivery receipt from Vicenza Sped for the Platinum that listed the value of the Platinum as €3,050,000.00." App. 116. The delivery receipt, although somewhat difficult to interpret, includes an entry that corroborates this value. See App. 94 (listing "EU 3.050.000,00"). Although we disagree with Chimet's suggestion that the delivery receipt functions as a "cargo receipt" providing "prima facie evidence" of the declared value under Article 11 of the Convention, see Chimet Br. at 19,[3] we conclude that the documentary evidence in the record does not conclusively resolve the dispute.

Nothing in the Montreal Convention precludes the

_____

[3] The "cargo receipt" is a document prepared by the carrier at the request of the consignor. Art. 4(2). The delivery receipt was prepared by Vicenza Sped, not Delta. App. 94. Moreover, the delivery receipt does not appear to include the information required under Article 5 of the Convention.

consideration of extrinsic evidence to determine the terms of the contract of carriage. On the contrary, the Convention includes language suggesting that other evidence beyond the air waybill may be considered. While the Convention designates the air waybill as the default method for preserving a "record of the carriage," it also contemplates the possibility that "[a]ny other means" may be used to preserve such a record. Art. 4(2); see also Art. 10(1) (referring to the "record preserved by the other means referred to in paragraph 2 of Article 4"); Art. 10(3) (same).[4] In addition, Article 11 provides merely that the "the air waybill or the cargo receipt is prima facie evidence of the conclusion of the contract, of the acceptance of the cargo, and of the conditions of carriage mentioned therein." Art. 11(1). This word choice – as contrasted with more explicit options such as "conclusive" or "complete" – clearly contemplates the possibility that the air waybill or cargo receipt may be rebutted by other evidence. See Black's Law Dictionary (8th ed. 2004) (defining prima facie evidence as "[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced" (emphasis added)). The delivery receipt provides at least some evidence to rebut Delta's position that no supplemental value was declared. Given the apparent tension between the waybill and the delivery receipt, as well as potential inconsistencies within the waybill itself, the District Court did not err by considering the parties' ability to gather additional evidence on this disputed issue.

Furthermore, Chimet met its burden of demonstrating that this evidence may only be obtained in Italy. Chimet produced an affidavit attesting to the need to obtain testimony from a number of Italian witnesses over whom United States courts lack subpoena power:

---

[4] The provision in Article 4(2) stating that "[i]f such other means are used, the carrier shall, if so requested by the consignor, deliver to the consignor a cargo a receipt permitting identification of the consignment and access to the information contained in the record preserved by such other means" does not rule out the possibility that another method for preserving the record of carriage, other than a waybill or cargo receipt, may have been used.

15

> To resolve the issue of whether Chimet made a declaration of value for shipment and paid a surcharge for it, Chimet will require the testimony of at least Arexpress and Vicenza Sped and the following individuals: Mr. Manuele Nocenti of Arexpress who arranged the operations pertaining to the transportation and custom clearance of the Platinium and gave instructions to Securpol and Vicenza Sped; Mrs. Stefania Criscuolo and Lavinia Damian of Vicenza Sped who [were] aware of the conditions in which [the] air waybill and delivery receipt were completed and provided to Delta; and also Messrs. Mattteo Vencato and Corrado Vezzaro who, on behalf of Vicenza Sped, physically delivered the goods to the agent of Delta received from this agent, as acknowledgment, the stamp signature on the "merchandise delivery receipt" mentioned above.

App. 118-19. This affidavit was sufficient to meet Chimet's burden of persuasion on this point. A party seeking to dismiss an action on forum non conveniens grounds is not required "to describe with specificity the evidence they would not be able to obtain if trial were held in the United States." Piper Aircraft, 454 U.S. at 258. The Supreme Court has rejected the suggestion that "defendants seeking forum non conveniens dismissal must submit affidavits identifying the witnesses they would call and the testimony these would provide if the trial were held in the alternative forum," explaining that "[s]uch detail is not necessary." Id. Rather, the defendant "must provide enough information to enable the District Court to balance the parties' interests." Id. In this case, Chimet identified the witnesses it intended to depose and proffered in oral argument the information that it expected to obtain. Given these representations, the District Court did not abuse its discretion in determining that access to evidence and the availability of witnesses weighed in favor of dismissal.

Delta also challenges the District Court's analysis regarding Chimet's stated intent to join third parties that it could not join if the litigation were to go forward in the United States. The District

Court considered "Chimet's ability to join Arexpress, Securpol Vigilantes, Vicenza Sped, and Malpensa Logistica Europea S.p.A. in its litigation with Delta" as an additional private interest factor supporting dismissal. App. 33. A defendant's "stated desire to pursue contribution claims against potentially responsible third parties" is a relevant private interest factor. Windt, 529 F.3d at 195. Delta asserts that Chimet has not, in fact, pursued claims against these third parties, and that the statute of limitations for bringing a claim under the Montreal Convention has now lapsed. See Delta Reply Br. at 5-6. Given our direction that a defendant's "stated desire" to pursue claims against foreign third parties must be considered among the private factors, Windt, 529 F.3d at 195 (emphasis added), Delta's argument that Chimet has not followed through on that stated desire does not warrant vacating the judgment. The District Court reasonably concluded that the private interest factors weighed in favor of dismissing the action.

2.

We turn next to the District Court's consideration of the public interest factors. The District Court concluded that "the local interest in having localized controversies decided at home favors dismissal of this action" because the "locus of the alleged culpable conduct is Italy." App. 34 (citing Lacey, 862 F.2d at 48). The court also concluded that "the administrative difficulties flowing from court congestion is a neutral factor" and that the courts in the two countries are "equally qualified to interpret and enforce" the Montreal Convention. App. 34.

Delta argues that the District Court failed to give sufficient weight to Pennsylvania's interest in the dispute. The factual issues at the center of this dispute, however, all involve whether Chimet declared the value of the shipment when it delivered the platinum to Delta in Italy. The circumstances under which the shipment of cargo was lost in Pennsylvania are not relevant to determining whether Delta's liability is limited under the Montreal Convention. "In evaluating the public interest factors the district court must 'consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum.'" Lacey, 862 F.2d at 42 (quoting Van

17

Cauwenberghe, 486 U.S. at 528). We agree with the District Court that the locus of the alleged culpable conduct was Italy, not Pennsylvania. The District Court therefore reasonably concluded that the public interest factors also supported dismissal of the action.

\* \* \* \*

Insofar as both sets of Gilbert factors – the private interest factors affecting the convenience of the litigants and the public interest factors affecting the convenience of the forum – weighed in favor of litigating this dispute in Italy, the District Court did not abuse its discretion by granting Chimet's motion to dismiss on forum non conveniens grounds.

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

18