**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1759
_____

KISANO TRADE & INVEST LIMITED;
TRASTECO LTD; VADIM SHULMAN,

                        Appellants


v.

DEV LEMSTER; STEEL EQUIPMENT CORP; AKIVA
SAPIR;
SAPIR ENTITIES 1-100
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT OF
PENNSYLVANIA
(D.C. Civil No. 11-cv-00852)
District Judge: Honorable Joy Flowers Conti
_____

Argued: October 8, 2013
_____

Before: FUENTES, GREENBERG and BARRY
*Circuit Judges*

(Opinion Filed: December 12, 2013)
_____

Bruce S. Marks, Esq. (*Argued*)
Thomas C. Sullivan, Esq.
Maria Temkin, Esq.
Marks & Sokolov
1835 Market Street
28th Floor
Philadelphia, PA 19103

*Counsel for Appellants*

Larry K. Elliott, Esq. (*Argued*)
David F. Russey, Esq.
Julie W. Vanneman, Esq.
Curt Vazquez, Esq.
Cohen & Grigsby
625 Liberty Avenue
Pittsburgh, PA 15222

*Counsel for Appellees*

_____

OPINION OF THE COURT
_____

BARRY, *Circuit Judge*

## I. Introduction

In June of 2011, Kisano Trade & Invest Limited ("Kisano") and Trasteco Ltd. ("Trasteco"), two companies owned by Vadim Shulman, filed suit in the U.S. District Court for the Western District of Pennsylvania against Dev Lemster and his company, Steel Equipment Corp. The complaint alleged violations of the Racketeer Influenced Corrupt Organizations Act ("RICO"), intentional interference with contract, unjust enrichment, and breach of fiduciary duty. After discovering evidence of what Shulman believed to be fraud perpetrated by his business partner, Akiva Sapir, an amended complaint added Shulman as a plaintiff, Sapir and certain of his entities as defendants, and several claims of fraud.

Between then and now, we vacated the grant of a preliminary injunction, and the parties moved forward on Sapir's motions to dismiss the complaint for failure to state a claim and on *forum non conveniens* grounds, the latter motion offering Israel as an alternative forum. The motions were referred by the District Court to the Magistrate Judge to issue

a Report and Recommendation (the "R&R"). The R&R recommended that the action be dismissed on *forum non conveniens* grounds, reasoning that Israel would be the more appropriate forum, and declined to reach the motion to dismiss for failure to state a claim, leaving that to be addressed, if appropriate, by the Israeli court. The District Court adopted the R&R, and granted the motion to dismiss for *forum non conveniens* "on the understanding that the case may be refiled in Israel and that the defendants waived certain statute of limitations defenses." (A00060.) Plaintiffs now appeal. We will affirm.

## II. *Jurisdiction and Standard of Review*

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1964(c), as the underlying claim asserts recovery under RICO. We have jurisdiction pursuant to 28 U.S.C. § 1291. "'[W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference.'" *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 631–32 (3d Cir. 1989) ("*Lony I*") (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)) (alteration in original). Thus, "we do not perform a *de novo* resolution of forum non conveniens issues," and instead review the District Court's dismissal on grounds of *forum non conveniens* for an abuse of discretion. *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir. 1988).

## III. *Forum Non Conveniens*

This case, at its core, involves plaintiffs' allegations of numerous claims of fraud—the Warren equipment "fraud," the Trasteco "secret deal," the Kisano "secret deal," the Plama "secret deal," the Veolia "secret deal," and the New York real estate "fraud." The parties, at great length, have set forth those facts that plaintiffs believe, on the one hand, support those claims, and defendants believe, on the other, defeat them. At the end of the day, however, the sole issue before us for review is the dismissal on grounds of *forum non conveniens*. We, therefore, will refer only to those facts necessary to our analysis of that issue.

3

Although a plaintiff's choice of forum should rarely be disturbed, "[w]hen an alternative forum has jurisdiction to hear the case, and when trial in the plaintiff's chosen forum would 'establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems,' the court may, in the exercise of its sound discretion, dismiss the case." *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008) (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)) (second alteration in original). We have identified the following four factors to guide a district court's exercise of discretion: (1) the amount of deference to be afforded to plaintiffs' choice of forum; (2) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable;[1] (3) relevant "private interest" factors affecting the convenience of the litigants; and (4) relevant "public interest" factors affecting the convenience of the forum. *See id.* at 189–90.

Private interests to consider include the ease of access to sources of proof; ability to compel witness attendance if necessary; means to view relevant premises and objects; and any other potential obstacle impeding an otherwise easy, cost-

---

[1] Although plaintiffs do not explicitly argue that Israel is not an adequate alternative forum, they initially contended, as part of their convenience analysis, that Lemster and Steel Equipment Corp. would not be amenable to suit in Israel. Those defendants, however, have consented to jurisdiction in Israel. *See Dahl v. United Techs. Corp.*, 632 F.2d 1027, 1029 (3d Cir. 1980) (affirming *forum non conveniens* dismissal on condition that defendant consent to Norwegian jurisdiction). Parenthetically, it is difficult to ignore the reality that this case has really become Shulman versus Sapir, and that the other parties, while they may be witnesses or be in control of relevant evidence, have receded in importance. In any event, because there is no serious dispute on appeal that Israel does not present an adequate alternative forum, we will not further address this factor.

effective, and expeditious trial. *Delta Air Lines, Inc. v. Chimet, S.p.A.*, 619 F.3d 288, 296 (3d Cir. 2010) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). Public interests include administrative difficulties arising from increasingly overburdened courts; local interests in having the case tried at home; desire to have the forum match the law that is to govern the case to avoid conflict of laws problems or difficulty in the application of foreign law; and avoiding unfairly burdening citizens in an unrelated forum with jury duty. *Id.* (citing *Piper Aircraft*, 454 U.S. at 241 n.6).

### A. Level of Deference

We first consider whether the District Court abused its discretion in affording plaintiffs' choice of forum a lesser degree of deference than would be accorded a domestic plaintiff. "Ordinarily, a strong presumption of convenience exists in favor of a domestic plaintiff's chosen forum, and this presumption may be overcome only when the balance of the public and private interests clearly favors an alternate forum." *Windt*, 529 F.3d at 190. When a plaintiff is foreign, however, the choice of a United States forum "deserves less deference." *Piper Aircraft*, 454 U.S. at 256; *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) ("When the plaintiff's choice is not its home forum, . . . the presumption in the plaintiff's favor applies with less force, for the assumption that the chosen forum is appropriate is in such cases less reasonable." (internal quotation marks omitted)). Among other reasons, courts are wary of the potential for foreign plaintiffs to seek jurisdiction in the United States because the laws may be more favorable to their claims. *See Piper Aircraft*, 454 U.S. at 249 n.15 ("[D]ismissal may be warranted where a plaintiff chooses a particular forum, not because it is convenient, but solely in order to . . . take advantage of favorable law.").

Shulman is an Israeli citizen, Kisano is a Cypriot corporation, and Trasteco is a Maltese LLC. Despite their foreign citizenship, they argue that the District Court erred by granting lesser deference to their choice of forum because of the "equal access" provision of a treaty between the United States and Israel which, as relevant here, states:

5

Nationals and companies of either Party shall be accorded national treatment and most-favored-nation treatment with respect to access to the courts of justice and to administrative tribunals and agencies within the territories of the other Party, in all degrees of jurisdiction, both in pursuit and in defense of their rights.

(A00553 (U.S.-Isr. Treaty, art. V(1)).) Plaintiffs invoke *Blanco v. Banco Industrial de Venezuela, S.A.*, 997 F.2d 974 (2d Cir. 1993), as essentially their sole support for the proposition that "when a treaty with a foreign nation accords its nationals access to our courts equivalent to that provided American citizens, identical forum non conveniens standards must be applied to such nationals by American courts." *Id.* at 981. Acknowledging that a United States-Venezuela treaty had an equal access provision, the Second Circuit found that "no discount may be imposed upon the plaintiff's initial choice of a New York forum in this case solely because [plaintiff] is a foreign corporation." *Id.*

For several reasons, we reject plaintiffs' invitation to conclude that the equal access provision in the United States-Israel treaty requires us to find that plaintiffs' forum choice is entitled to the identical deference courts must afford a domestic plaintiff. First, the Second Circuit's discussion of the level of deference owed a foreign plaintiff who is a citizen of a country with an "equal access" agreement with the United States was *dicta*. The court dismissed the action on *forum non conveniens* grounds, notwithstanding the deference "owed," because of the strong private and public factors favoring a Venezuelan forum. *Blanco*, 997 F.2d at 981; *see In re Air Crash Near Peixoto de Azeveda, Braz., on Sept. 29, 2006*, 574 F. Supp. 2d 272, 280-81 (E.D.N.Y. 2008) (finding that *Blanco*'s discussion was *dicta* and holding that foreign plaintiff's forum choice subject to an identical provision is afforded "reduced deference").

Moreover, *Blanco*'s reasoning has been significantly diminished, if not altogether rejected, by a subsequent Second Circuit case. In that case, the court held that even if a treaty entitled plaintiffs "to access American courts on the same

6

terms as American citizens . . . [its] case law does not support plaintiffs' assertion that such a treaty would require that their choice of forum be afforded the same deference afforded to a U.S. citizen bringing suit in his or her home forum." *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 73 (2d Cir. 2003). Rather, "[p]laintiffs are only entitled, at best, to the lesser deference afforded a U.S. citizen living abroad who sues in a U.S. forum." *Id.* The Second Circuit noted that the touchstone inquiry regarding the level of deference owed a plaintiff's choice of forum is not the "citizenship or residence of the parties," but the convenience of the forum. *Id.* The "lesser degree of deference typically afforded foreign plaintiffs . . . . is not intended to create difficulties for foreign plaintiffs, but is based instead on realistic doubts about the ultimate convenience of a foreign plaintiff's choice to litigate in the United States." *Id.*

The Second Circuit's more recent discussion of the issue is both more persuasive and, more importantly, consistent with the Supreme Court's and our Court's *forum non conveniens* case law. As the Supreme Court has explained, the presumption in favor of a domestic plaintiff's choice of forum—and the reduced deference owed a foreign plaintiff—is based on *convenience*:

> When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.

*Piper Aircraft*, 454 U.S. at 255-56; *see also Windt*, 529 F.3d at 190-91 (quoting *Piper Aircraft* and affording lesser deference to foreign plaintiffs). As the *Pollux Holding* court noted, a court considering a motion to dismiss on *forum non conveniens* grounds should not assign "talismanic significance to the citizenship or residence of the parties," but should give less deference to a foreign plaintiff's choice of forum because "it would be less reasonable to assume the

7

choice of forum is based on convenience." 329 F.3d at 73 (internal quotation marks omitted); *see also Lony I*, 886 F.2d at 634 ("[T]he reason for giving a foreign plaintiff's choice less deference is not xenophobia, but merely a reluctance to assume that the choice is a convenient one . . . .").

The focus of the deference inquiry in the Supreme Court, in this Court, and in the Second Circuit is on convenience, not on the particular significance of a party's residence or citizenship or a party's ability to invoke a United States court's jurisdiction. That the United States and Israel have agreed to open up their judicial gates to their respective citizens does nothing to disturb the longstanding presumption that a foreign plaintiff's choice of a United States forum is less likely to be motivated by convenience. *See* 14D Charles Alan Wright et al., *Federal Practice and Procedure* § 3828.2 (3d ed. 2007) ("[I]n practice, federal courts generally hold that [treaties promising equal access to courts] do not entitle foreign plaintiffs to the same deference as United States citizens."). We, therefore, conclude that the equal access provision in the United States-Israel treaty does not change our analysis with respect to the degree of deference a district court must afford a foreign plaintiff's choice of forum.

Of course, foreign plaintiffs "may bolster the amount of deference due their choice by making a *strong* showing of convenience." *Windt*, 529 F.3d at 190 (emphasis added). In performing its *forum non conveniens* inquiry, a district court "must assess[, and articulate,] whether the considerable evidence of convenience has . . . overcome any reason to refrain from extending full deference to the foreign plaintiff's choice." *Lony I*, 886 F.2d at 634. This is not a precise inquiry, but, generally, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for *forum non conveniens*." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 72 (2d Cir. 2001) (footnotes omitted).

The District Court considered the evidence of

8

convenience and concluded that plaintiffs' choice of forum merited only lesser deference. It did not abuse its discretion in so concluding. In attempting to make a strong showing of convenience, plaintiffs point principally to Shulman's dealings with Lemster and Steel Equipment Corp. in Pennsylvania, including the Warren deal, his and Trasteco/Kisano's prior business dealings in the United States, the existence of key English-speaking witnesses in the forum, and his local attorneys' knowledge of the case.[2] The District Court, however, concluded that Shulman and his companies' connections with the United States were not particularly extensive or significant. Other than having some business dealings in the United States, such as ownership of real estate in New York, and minority ownership in an Ohio Steel plant, all managed remotely, Shulman himself has had little connection with the United States. And, although he is correct that the wiring of money and the purchase of the Warren plant and equipment took place in Pennsylvania, the District Court correctly noted that the agency relationship was formed in Israel, all negotiations for the Warren deal took place in Israel, and most of the conduct for the claims at issue took place in Israel.[3] Moreover, the District Court did not err

---

[2] Plaintiffs contend that it was error for the District Court to consider Shulman's position in a separate West Virginia case in which he argued, in a motion to dismiss for lack of personal jurisdiction, that he did no business there and that it would be an unfair burden on him to personally defend claims in a remote forum in a foreign language. While, to be sure, the jurisdictional question in that case is different from the question before us, the District Court was entitled to take judicial notice of Shulman's reasons when disputing personal jurisdiction. If it is *such* a burden for him to address a lawsuit in a neighboring United States jurisdiction in the English language, it seriously undermines an argument that his forum choice in this case was motivated by his convenience.

[3] Plaintiffs' strong reliance on the conduct underlying the Warren plant and equipment purchase in Pennsylvania is misplaced, as explained in the District Court's discussion of the private interest factors. Shulman claims that much of the evidence of that fraud, including relevant witnesses, exists in Pennsylvania. However, Sapir does not dispute that the

in crediting the unrebutted declaration of an Israeli lawyer stating that documents in English would not have to be translated into Hebrew in an Israeli court. Finally, the convenience of counsel in a matter is not a relevant factor. *See Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1047 (3d Cir. 1973).[4] The District Court did not abuse its discretion in finding that plaintiffs did not make a strong showing of convenience and therefore affording lesser deference to their choice of forum.

### B. *"Oppressiveness and Vexation"*

Having concluded that the District Court did not err in according lesser deference to plaintiffs' choice of forum, we turn to whether it abused its discretion when weighing the private and public interest factors in determining if plaintiffs'

---

actual purchase price of the plant and equipment was approximately $6.6 million. Rather, he argues that Shulman *knew* the actual purchase price, as it was discussed during negotiations, and the alleged additional $6.4 million received by Sapir was consideration for separate business deals—that there was, in other words, no misrepresentation. It appears, therefore, that much of the evidence that exists in Pennsylvania—such as the wires and witnesses that can authenticate them—has been admitted by Sapir. Sapir's defense apparently relies on what happened during the *negotiation* of the deal, in Israel.

[4] Defendants also argue that plaintiffs engaged in forum shopping to take advantage of the favorable United States laws, particularly RICO. The District Court declined to make a finding of forum shopping and did not consider it in its convenience analysis. Nevertheless, it is at least worth noting that the possibility of a treble damages award under RICO— and the unavailability of such remedy in Israel—may have, at least in part, motivated plaintiffs to choose a United States forum. *See Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 155 (2d Cir. 2005) (noting possibility of forum-shopping motives based on availability of RICO awards despite lack of district court findings). This, of course, would further support a presumption that plaintiffs' forum choice was not based on convenience.

chosen forum would cause "oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience." *Koster*, 330 U.S. at 524. When seeking dismissal on grounds of *forum non conveniens*, a defendant must show that the balance of public and private factors "tips decidedly in favor of trial in the foreign forum." *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991) ("*Lacey II*").

As an initial matter, plaintiffs argue that the District Court erred as a matter of law in failing to apply the "oppressiveness and vexation" standard. This argument is without merit. While the R&R did not specifically mention those words, the Magistrate Judge's analysis and the District Court's opinion adopting the R&R clearly reflect that the appropriate standard was applied. Moreover, the District Court, when adopting and supplementing the R&R, explicitly acknowledged this standard when overruling plaintiffs' objection that the Magistrate Judge "faile[ed] to apply the 'oppressiveness and vexation' standard." (A00055.) Although the District Court did not engage in a lengthy discussion of "oppressiveness and vexation," its thorough analysis of the private and public interest factors and its findings reflect a correct understanding of the standard and permits our appellate review of the Court's "actual consideration and analysis." *Windt*, 529 F.3d at 196 (stating that District Court's failure to state correct "oppressiveness and vexation" standard was not error when it correctly applied the standard and permitted meaningful appellate review).

### 1. *Private Interest Factors*

Plaintiffs argue that the District Court abused its discretion in its assessment of the private interest factors. To reiterate, private interests include such things as ease of access to sources of proof, ability to compel witness attendance, and other potential obstacles to a cost-effective and expeditious trial. *Delta Air Lines, Inc.*, 619 F.3d at 296.

The parties go through lengthy discussions of the witnesses, their countries of residence, their preferred

languages, and the facts to which each may testify. We need not scrutinize all of these materials to perform our function of appellate review, nor was it necessary for the District Court to have done so. *See id.* at 299-300 ("The Supreme Court has rejected the suggestion that defendants seeking *forum non conveniens* dismissal must submit affidavits identifying the witnesses they would call and the testimony these would provide if the trial were held in the alternative forum, explaining that such detail is not necessary. Rather, the defendant must provide enough information to enable the District Court to balance the parties' interests." (internal citations and quotation marks omitted)).

It suffices to say that Shulman identifies several witnesses located in the United States with knowledge of the various deals, while Sapir identifies nearly twenty witnesses located abroad, the majority of whom live in Israel, the country of residence of both Sapir and Shulman. Sapir contends that Shulman's witnesses in the United States will testify to facts not in dispute, such as the purchase price of the Warren plant and equipment and the fact that $500,000 was never paid to one Bob Stump in connection with this purchase. Rather, Sapir's defense is that Shulman knew the actual purchase price and that the witnesses with information regarding the actual negotiation of the disputed deals are located in Israel or live closer to Israel. Shulman also argues, without any authority, that there are roughly 18,700 pages of documents in English that would need to be translated into Hebrew in an Israeli forum. As noted above, Sapir provided the declaration of an Israeli lawyer, asserting that documents in English need not be translated because Israel courts are typically proficient in English.[5]

---

[5] Plaintiffs also object to the District Court's consideration of defendant Sapir's medical issues. Sapir submitted a declaration stating that he suffers from antiphospholipid syndrome which prevents him from flying long distances and that traveling to the United States would cause severe health risks. The District Court, however, with the competing affidavits of doctors from both sides, declined to conclusively resolve the issue and instead based its decision on other private interests. We do not address it further.

The location of the parties, their witnesses, and the availability of evidence favor resolution in Israel. The District Court did not abuse its discretion in concluding that the private interest factors weighed in favor of dismissal.

### 2. *Public Interest Factors*

Plaintiffs also argue that the District Court erred in weighing the public interest factors because it applied the wrong standard, citing *Lacey II* for the proposition that absent a showing that the private interest factors impose oppressiveness or vexation, a defendant must show the public interest factors weigh heavily in favor of dismissal. Plaintiffs misstate the relevant test: To prevail on a *forum non conveniens* motion, "the movant must show that the *balance* of these [private and public interest] factors tips decidedly in favor of trial in the foreign forum." *Lacey II*, 932 F.2d at 180 (emphasis added).

Plaintiffs contend that there is no congestion in the chosen district, that there is a strong federal interest in plaintiffs' choice of forum, that a United States jury has a strong interest in the case, that Pennsylvania law will apply, that the locus of the culpable conduct occurred in Pennsylvania, and that the District Court has already invested substantial resources in the case.

As the District Court noted, however, Shulman and Sapir met in Israel, discussed and negotiated the purchase of the Warren plant and equipment in Israel, discussed the coal deals in Israel, and most interactions with each other took place in Israel, Monaco or the Ukraine, not in Pennsylvania (or even in the United States). Other than the actual wire payments and Shulman's law firm, there appears to be no other connection to Pennsylvania, and little else to the United States. The District Court further concluded that there had been no apparent progress made in the case. As to the other factors, the District Court found the choice-of-law issue potentially complicated and did not address it. *See id.* at 187 n.14 ("[I]n resolving a *forum non conveniens* motion, the district court is not required to predict what law the foreign court would apply."). It also correctly noted that not every

public interest factor need weigh in favor of dismissal.

Accordingly, the District Court did not abuse its discretion in finding that public interest factors weighed in favor of dismissal.

## *IV. Conclusion*

The order of the District Court dismissing the action on *forum non conveniens* grounds will be affirmed.